1

2

3

4

5

6                  IN THE UNITED STATES DISTRICT COURT

7

8                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

9   MICROSOFT CORPORATION,

10              Plaintiff,                              No. C 07-01839 JSW

11       v.

12   EEE BUSINESS INC., d/b/a                           **ORDER GRANTING MOTION**
     EBUSZONE.COM and EBZ EBZ; MING NO                  **FOR PARTIAL SUMMARY**
13   SHANG; LIFENG WANG, a/k/a ALICE                    **JUDGMENT**
     WANG; NANCY LINKER; and DOES 1-5,
14
                Defendants.
15   _____/

16

17          Now before the Court is the motion for partial summary judgment filed by Plaintiff

     Microsoft Corporation ("Microsoft") against defendant Lifeng Wang, a/k/a Alice Wang
18
     ("Wang") for dismissal of claims one through four of the complaint for damages and injunctive
19
     relief.  Having carefully considered the parties' papers, oral argument, and the relevant legal
20
     authority, the Court hereby GRANTS Microsoft's motion for partial summary judgment.
21
                                     **BACKGROUND**
22
            Defendant Wang was previously arrested for selling counterfeit Microsoft software,
23
     conduct which resulted in her prosecution, a sentence of two months in prison and an order to
24
     pay restitution in the amount $93, 611.  (*See* Declaration of Deborah M. Johnson "(D. Johnson
25
     Decl."), Ex. 1, Wang Tr. Ex. 7.)  Wang was also civilly sued by Microsoft for copyright
26
     infringement and defendant settled that action in June 2006 for a large payment and her
27
     agreement to refrain from further acts of infringement.  (*See id.*, Wang Tr. Exs. 8, 9.)
28

**United States District Court**
For the Northern District of California

1    Despite this prior conduct, Microsoft alleges in this lawsuit that defendant Wang is

2    again liable for infringing its copyrighted works by setting up and running EEE Business, an

3    on-line business that sold infringing Microsoft products.  (*See id.,* Wang Tr. 28:19-29:2, 46:9-

4    25, 60:5-17, 61:11-62:7, 70:21-71:15, 74:5-17, 76:8-77:15, 112:17-113:11, 114:19-116:10,

5    130:17-25, 132:21-133:24; Exs. 18, 36, 38.)  Wang set up many aspects of the business

6    enterprise, including leasing office space, renting a mail box used by the business, opening and

7    managing tow Bank of America bank accounts for the business, opening and running a PayPal

8    account for the business, and applying for a credit card merchant account.  (*See id.,* Wang Tr.

9    119:21-120:23, 58:11-60:4, 69:7-70:25, 81:21:82:1, 63:21-64:14, 112:17-113:11; Exs. 39, 36,

10   18, 19, 26, 17.)  Wang performed these acts by holding herself out as an officer, manager, and

11   majority shareholder of EEE Business.  (*See id.,* Wang Tr. 96:15-98:1, 100:5-9, 112:17-113:11,

12   115:11-116:10, 119:21-120:9; Exs. 32-33, 36, 38-29.)

13       Defendants' infringing activities came to the attention of law enforcement and on May

14   16, 2007, United States Probation arrested Wang for multiple violations of her supervised

15   release.  (*See id.,* Wang Tr. 122:20-124:25; Ex. 40.)  Law enforcement searched her home and

16   seized infringing Microsoft software worth $106,145.  (*See id.,* Wang Tr. 125:15-25; Ex. 42.)

17   She was returned to prison and faces deportation for her trafficking in counterfeit Microsoft

18   products.  (*See id.,* Wang Tr. 123:4-7, 37:7-38:5, 40:23-41:1; Ex. 40.)

19       Microsoft and its partners distribute software called Student Media through special

20   academic programs to provide low cost software to students currently enrolled in kindergarten

21   through twelfth grade.  (Complaint at ¶ 14.)  Microsoft distributes the program to students in the

22   United States and abroad, and imposes geographical restrictions on its distribution.  (*Id.* at ¶¶

23   14, 16.)  In addition, only certain resellers who are specially trained and authorized may

24   distribute Student Media to qualified education users.  (*Id.* at ¶ 15.)  Microsoft also develops,

25   distributes and licenses other software packages, including Microsoft Windows XP, an

26   operating system, and Microsoft Office 2003, a suite of popular Microsoft software programs.

27   (*Id.* at ¶¶ 17-18.)

28

**United States District Court**
For the Northern District of California

2

United States District Court

For the Northern District of California

Microsoft brought this civil action against defendant Wang, EEE Business, and a few individuals for unauthorized importation into the United States of Microsoft Student Media software that was manufactured and licensed for use abroad, and distributing Student Media to individuals and entities not qualified to use the software, without approval or authorization. (*Id.* at ¶ 19.) On six separate occasions, investigators hired by Microsoft placed orders for various Microsoft software products and, upon receipt, determined that the products were infringing on its exclusive copyrights.

Microsoft brings this motion for partial summary judgment to establish liability by defendant Wang for copyright infringement, infringing importation of copyrighted works, violation of the Digital Millennium Copyright Act and violation of the Anti-Counterfeiting Amendments Act.

## ANALYSIS

### A.    Legal Standard for Motions for Summary Judgment.

A court may grant summary judgment as to all or a part of a party's claims. Fed. R. Civ. P. 56(a). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if the fact may affect the outcome of the case. *Id.* at 248. "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of

1   material fact. *Id.* at 323. Where the moving party will have the burden of proof on an issue at

2   trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for

3   the moving party. *Id.* Once the moving party meets this initial burden, the non-moving party

4   must go beyond the pleadings and by its own evidence "set forth specific facts showing that

5   there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party must "identify

6   with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*,

7   91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251

8   (7th Cir. 1995)) (stating that it is not a district court's task to "scour the record in search of a

9   genuine issue of triable fact"). If the non-moving party fails to make this showing, the moving

10  party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

11          **B.      Legal Standard for Counts Microsoft Moves Upon.**

12          Pursuant to Federal Rule of Civil Procedure 56, Microsoft seeks summary judgment as

13  to defendant Wang's liability for (1) copyright infringement pursuant to 17 U.S.C. § 501; (2)

14  unauthorized importation of copyrighted works pursuant to 17 U.S.C. § 602(a); (3)

15  unauthorized distribution of product keys pursuant to 17 U.S.C. § 1201(a)(2); and (4)

16  trafficking in counterfeit volume license key labels pursuant to 18 U.S.C. § 2318(a).

17          The Copyright Act grants the copyright owner several exclusive rights, including the

18  exclusive right to distribution. 17 U.S.C. § 106(3). In addition, the Copyright Act provides that

19  it is an unlawful infringement of a copyright owner's rights to import into the United States

20  copyrighted works acquired abroad without the copyright owner's authority. 17 U.S.C. §

21  602(a). To establish a claim for copyright infringement, a plaintiff need only show that (1) it

22  owns valid copyrights in the works at issue, and (2) defendant encroached upon plaintiff's

23  exclusive rights under the Copyright Act. 17 U.S.C. § 501; *see also Feist Publications, Inc. v.*

24  *Rural Tel. Service Co.*, 499 U.S. 340, 361 (1991).

25          The Copyright Act further protects a copyright owner's exclusive right of distribution by

26  prohibiting the importation into the United States of a copyrighted work that was acquired

27  outside the United States unless the copyright owner grants specific authority to do so. 17

28  U.S.C. § 602(a) ("Importation into the United States, without authority of the owner of

United States District Court
For the Northern District of California

4

1  copyright under this title, of copies or phonorecords of a work that have been acquired outside

2  the United States is an infringement of the exclusive rights to distribute copies or phonorecords

3  under section 106, actionable under section 501.").

4       Federal law also prohibits trafficking in "counterfeit or illicit" labels affixed or designed

5  to be affixes to copies of computer programs.  18 U.S.C. § 2318(a).  Moreover, the Digital

6  Millennium Copyright Act ("DCMA") prohibits the distribution of items (a) primarily designed

7  or produced for the purpose of circumventing technological measures that effectively control

8  access to a copyrighted work, (b) have only a limited commercially significant purpose or use

9  other than to circumvent such technological measures, or (c) are marketed for use in

10 circumventing such technological measures.  17 U.S.C. § 1201(a)(2).  In conjunction, these

11 federal statutes provide copyright owners protection against unauthorized users or distributors

12 who attempt to circumvent security features designed to protect access to the copyrighted work.

13 *See, e.g., 321 Studios v. MGM Studios, Inc.*, 307 F. Supp. 2d 1085, 1099 (N.D. Cal. 2004)

14 (holding that software used to circumvent encryption features used by copyright owner to

15 protect unauthorized access to its DVDs key violates 17 U.S.C. § 1201(a)(2)).

16       **C.    Wang's Declaration Does Not Establish Liability for Direct Infringement.**

17       Microsoft contends that Defendant EEE Business, Inc.'s distribution of Microsoft

18 Student Media software to other than qualified educational users violates Microsoft's exclusive

19 right of distribution under the Copyright Act, and that defendant Wang, as an instrumental part

20 of that organization, is similarly liable.  Microsoft argues that the test purchases of the software

21 from EEE Business establishes that the company plainly infringed on Microsoft's copyrights

22 and that defendant Wang was actively engaged in and directly caused such infringement.

23 Microsoft contends that Wang's participation included leasing the Santa Clara office space for

24 the company, renting the private mail box in Milpitas, opening the PayPal account, opening

25 company accounts at Bank of America, applying for a credit card merchant account, preparing

26 an application to be a reseller with a company called Micro, purchasing telephone equipment,

27 and hiring a public accountant.

28

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

On the lease for the office space, Wang identified herself as "President" of EEE Business and provided a personal guaranty of the company's rental obligation. (*See* D. Johnson Decl., Ex. 1, Wang Tr. Ex. 39.) Wang signed the rental agreement for the mail box on behalf of EEE Business and the mail box was used by the business in the sales of infringing software to Microsoft's investigators. (*See id.,* Wang Tr. Ex. 14; Exs. 11, 12; ¶¶ 10-11, 20-21, Wang Exs. 3-4, 8-9; Wang Tr. Exs 19, 26.) The PayPal account is in Wang's name and lists her personal information, including her residence, cellular telephone number and credit card numbers. (*See id.*, Wang Tr. Ex. 17.) The PayPal account processed $1,400,199.08 in revenues for EEE Business. (*See id.*) The Bank of America accounts list both Wang's private residence and the Milpitas mail box as account addresses, Wang had signature authority over both accounts and signed the checks drawn on both accounts. (*See id.*, Wang Tr. 71:12-15, 72:13-16, Ex. 19; Wang Tr. 81-21-82:1, Ex. 26; Wang Tr. 76:8-77:10, Ex. 18.) On the application for the credit card merchant account, Wang lists herself as "President" of EEE Business and identifies herself as the majority owner of the company. (*See id.*, Wang Tr. Ex. 36.) On the reseller application form, Wang listed herself as "President" of EEE Business and claimed to own 90 percent of the company. (*See id.,* Wang Tr. Ex. 38.) On the forms to purchase the telephone equipment, Wang again listed herself as "President" and "Manager" of EEE Business. (*See id.*, Wang Tr. Ex. 32.) Wang represented herself as "Manager" of EEE Business on the engagement letter for a CPA she met with for the purpose of preparing tax and other financial information for the company. (*See id.*, Wang Tr. 100:5-9, Ex. 33.) In addition, the uncontroverted evidence demonstrates that Wang withdrew over $470,000 form the two accounts. (*See id.*, Wang Tr. 87:7-90:23, 91:9-94:7, Exs. 29, 30.) Lastly, Wang held herself out as the "C.E.O." of EEE Business on her business card. (*See id.*, Wang Tr. Ex. 4.)

However, in her declaration in opposition to the pending motion for partial summary judgment, Wang states that she was only involved in setting up the infrastructure of the company and the business service providers required that she represent that she was either a manager, president or CEO and/or that she had a controlling interest in the corporation. (*See* Declaration of Lifeng Wang in opposition to motion for partial summary judgment ("Wang

6

United States District Court

For the Northern District of California

1    Decl."), ¶ 10.)  Although Wang does not dispute that she represented herself as the president

2    and manager to various providers, she states that she was not actually the manager, and that she

3    was "just setting up the infrastructure for the corporation to conduct business."  (*Id.*, ¶ 44.)

4          Microsoft contends that summary judgment should still be granted on the basis that

5    Wang encroached upon Microsoft's exclusive and valid copyright rights.  *See* 17 U.S.C. § 501.

6    Microsoft argues that this Court should consider Wang's declaration to be a "sham affidavit,"

7    that fails to satisfy the admissible evidence requirement under Federal Rule of Civil Procedure

8    56(e) and should therefore be disregarded.  Microsoft contends that considering the

9    uncontroverted evidence that Wang is a convicted seller of counterfeit and infringing Microsoft

10    software, that similar software was found in her residence during her supervised release and that

11    she represented multiple times that she was a president or manager of the company, her

12    affidavit in defense of their motion should be disregarded as incredible.

13          Under the Seventh Circuit's holding in *Seshadri v. Kasraian*, 130 F.3d 798, 802 (7th

14    Cir. 1997), the court held that although a court ordinarily does not make credibility findings at

15    summary judgment, "testimony can and should be rejected without a trial if, in the

16    circumstances, no reasonable person would believe it."  However, under Ninth Circuit

17    authority, this Court is bound to accept direct evidence of the central facts in dispute at

18    summary judgment, even where the Court finds that no reasonable jury would believe it.  *Leslie*

19    *v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).  Although the Court questions the veracity

20    of the declaration considering the rest of the evidence in the record, Wang explained that she

21    lied to all service providers about her status in the company because it was only she who could

22    set up the EEE Business accounts.  (*See* Wang Decl., ¶¶ 10, 44.)  Under prevailing Ninth Circuit

23    law, the Court is bound to accept the truth of Wang's declaration at summary judgment and

24    therefore cannot find that she is directly liable for copyright infringement on this basis.

25        **D.**      **Defendant's Admissions Establish Liability.**

26          On November 30, 2007, Microsoft issued its first set of Requests for Admission.  (*See*

27    D. Johnson Decl., Ex. 2.)  Although Wang was represented by counsel at the time, Wang did

28    not respond to the Admissions.  In her declaration filed in support of her opposition, Wang

1   contends that she never admitted to the admissions and, although her previous attorney was

2   served with the Requests for Admissions, that attorney never forwarded the requests to her

3   current attorney.  (*See* Wang Decl., ¶¶ 46-48.)  Wang states that her new attorney was never

4   informed by Microsoft of the outstanding discovery.  (*See id.*, ¶ 49.)  However, it is clear from

5   Microsoft's submissions on reply that Microsoft repeatedly informed Wang's new attorney of

6   the outstanding Requests for Admission and of the deadline to answer.  On December 7, 2007,

7   the day after Wang's current attorney was retained, Microsoft sent counsel a letter outlining the

8   discovery requests that had been made to date and specifically notified counsel of the

9   impending January 2, 2008 deadline for answers for the first set of Requests.  (*See* Declaration

10  of Scott T. Wilsdon, ¶ 2.)  On December 27, 2007, Microsoft again notified Wang's new

11  counsel of the January 2, 2008 deadline to answer the pending Requests.  (*See id.*, ¶ 4, Ex. 3.)

12  In addition, as of March 10, 2008 when Microsoft filed its opening brief of the motion for

13  partial summary judgment premised, in part, on Wang's admissions by failure to respond to the

14  Requests, Wang has had notice of her failure to answer the Requests.  Although there is some

15  mention of her intention to file a motion to withdraw the admissions in the parties' joint case

16  management statement filed before this Court and although defendants' counsel was queried at

17  oral argument about filing such a motion, to date, no such motion has been filed.

18          Pursuant to Federal Rule of Civil Procedure 36(a)(3), a "matter is deemed admitted

19  unless, within 30 days after service of the request ... the party to whom the request is directed

20  serves upon the party requesting the admission a written answer or objection addressed to the

21  matter, signed by the party or by the party's attorney."  Further, a "matter deemed admitted

22  under this rule is conclusively established unless the court, on motion, permits the admission to

23  be withdrawn."  Fed. R. Civ. P. 36(b); *see also Conlon v. United States*, 474 F.3d 616, 622 (9th

24  Cir. 2007).  Because there is no motion to withdraw the admissions, and the determination

25  whether to grant such a motion is discretionary, the Court deems those matters admitted.

26          Accordingly, Wang is deemed to have admitted that the test purchases from Microsoft's

27  investigators conclusively establish that Wang was responsible for infringing Microsoft Student

28  Media and Volume License Media software.  (Declaration of Tamara Johnson ("T. Johnson

United States District Court
For the Northern District of California

8

United States District Court

For the Northern District of California

1    Decl."), ¶¶ 8-10, 15, 20-21.)  Defendants' distribution of Microsoft software to other than

2    qualified users violates Microsoft's exclusive right to distribution under the Copyright Act.  *See*

3    17 U.S.C. §§ 106(3), 501(a).  The evidence from the six test purchases of Microsoft software

4    establishes that defendant Wang distributed Student Media versions of Microsoft Window XP

5    as well as Microsoft Volume License software and deposited the revenues into the EEE

6    Business operating account.  (*See* T. Johnson Decl., ¶¶ 8-11, 19-21, Exs. 1-4, 8-9; Wang

7    Admissions at 4, 5, Nos. 1-6.)  This distribution of software without authorization plainly

8    violates Microsoft's exclusive right to distribution under 17 U.S.C. § 501.  Accordingly, the

9    undisputed facts establish that defendant Wang is liable for infringement of Microsoft's

10   copyrights.

11          Wang's admissions regarding the test purchases further establish that defendants import

12   and/or distribute Microsoft software manufactured and licensed for distribution abroad.  Section

13   602(a) of the Copyright Act provides that "[i]mportation into the United States, without the

14   authority of the owner of copyright under this title, of copies ... of a work that have been

15   acquired outside the United States is an infringement of the exclusive right to distribute copies

16   ... under section 106, actionable under section 501."  17 U.S.C. § 602(a).  The evidence in the

17   record establishes that the Student Media software was imported and distributed within the

18   United States without Microsoft's authority and that defendants were not authorized to import

19   or export to the United States software that was licensed for distribution abroad.  (*See* T.

20   Johnson Decl., ¶ 14.)  In addition, the discs were clearly marked "Not for Resale."  (*See id.*, ¶¶

21   8-11, Exs. 1-4.)  Defendants' importation to the United States of software manufactured and

22   licensed for exclusive use abroad is a plain violation of 17 U.S.C. § 602(a).  Accordingly, the

23   undisputed facts establish that defendant Wang is liable for infringing importation of

24   Microsoft's copyrighted works.

25          Lastly, among the works defendant Wang sold to Microsoft's outside investigators were

26   software only available under a Volume License Agreement.  This agreement permitted only

27   authorized licensees to install software to unlock the media programming to enable the user to

28   enter a 25-character alphanumeric code – the Volume License Key – which is unique to the

9

United States District Court

For the Northern District of California

1    licensee and required to be kept confidential under the terms of the Volume License Agreement.

2    (*See id.*, ¶¶ 17-18.)  By distributing a VLK without authorization, Wang effectively

3    circumvented Microsoft's technological measure to control access to a copyrighted work in

4    violation of the DCMA.  *See* 17 U.S.C. § 1201(a)(2).  Additionally, the VLK's placement on a

5    counterfeit label which accompanied the Volume License versions of the Windows XP and

6    Office 2003 software that Wang sold to Microsoft's investigators constitutes trafficking in

7    counterfeit labels.  *See* 18 U.S.C. § 2318(a)(1)(B), (b)(1).  (*See also* T. Johnson Decl., ¶¶ 20-

8    21.)

9          Accordingly, pursuant to her uncontested admissions, Wang is liable for copyright

10   infringement, unauthorized importation of copyrighted works, unauthorized distribution of

11   product keys, and trafficking in counterfeit volume license key labels.  Microsoft is entitled to

12   summary judgment on counts one through four on this basis.

13              **E.    Defendant is Liable for Contributory Infringement.**

14         In addition, even without considering defendant's admissions from the unanswered

15   Requests for Admission, according to the undisputed facts in the record, Wang is liable for

16   copyright infringement and the attendant causes of action because of her conduct contributing to

17   the infringement.  "Contributory infringement originates in tort law and stems from the notion

18   that one who directly contributes to another's infringement should be held accountable."

19   *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996).  "[O]ne who, with

20   knowledge of the infringing activity, induced, causes or materially contributes to the infringing

21   conduct of another, may be held liable as a 'contributory' infringer."  *Id.*, quoting *Gershwin*

22   *Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971).

23   An individual may be liable for contributory infringement even where she does not have actual

24   knowledge of the infringing activity, but should have reason to know of the infringing conduct.

25   *Cable/Home Comm. Corp. v. Network Prods., Inc.*, 902 F.2d 829, 845-46 (11th Cir. 1990).

26         The undisputed facts establish that Wang was aware of EEE Business and its infringing

27   activity.  (*See* D. Johnson Decl., Ex. 1, Wang Tr. 22:14-19)  Wang does not contest that she

28   was instrumental in the procurement of leasing space of the company, renting a private mail

10

box, opening a PayPal account in her name which was used to receive payment for the sale of infringing Microsoft products, opening Bank of America accounts for the company, applying for a credit card merchant account, registering EEE Business as a reseller for a business partner, purchasing telephone equipment for the business and hiring a CPA to prepare tax returns for the company.  Given this substantial contribution to the endeavors of EEE Business, and considering her knowledge of the company's infringing conduct, the Court finds her liable on a theory of contributory infringement.  Accordingly, Microsoft is entitled to partial summary judgment on counts one through four on this basis.  *See, e.g., Microsoft Corp. v. Silver Star Micro, Inc.*, 2008 WL 115006, at \*8 n.8 (N.D. Ga. Jan. 9, 2008) (citing *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004) (holding that the court analyzes contributory and vicarious liability under the DCMA in the same manner as determining personal liability for violations of the Copyright Act.

### F.     Microsoft is Entitled to a Permanent Injunction.

Accordingly, pursuant to Federal Rule of Civil Procedure 56 and 17 U.S.C. § 502(a), 17 U.S.C. § 1203(b)(1) and 18 U.S.C. § 2318(f)(2)(A), the Court finds that Microsoft is entitled to a permanent injunction as follows: The Court ORDERS that defendant Wang, along with her agents, servants, employees, representatives, successors, assigns, and all those persons acting at her direction or control, shall be and hereby are permanently enjoined and restrained from:

(a)     importing to or distributing within the United States any Microsoft software programs (including but not limited to Student Media), components, end user license agreements, or any other items protected by Microsoft's copyrights, including, but not limited to, the following Certificate Registration Numbers:

        (i)     TX 5-407-055 ("Microsoft Windows XP");

        (ii)    TX 5-837-617 ("Microsoft Office 2003");

        (iii)   TX 5-872-225 ("Microsoft Access 2003");

        (iv)   TX 5-837-636 ("Microsoft Excel 2003");

        (v)    TX 5-900-087 ("Microsoft Outlook 2003");

        (vi)   TX 5-852-649 ("Microsoft PowerPoint 2003");

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

(vii)   TX 5-900-088 ("Microsoft Word 2003"); and

(viii)   Other items or works protected by Microsoft's copyrights; manufactured abroad and license for exclusive distribution outside the United States;

(b)   distributing or making any other infringing use of Microsoft Student Media software protected by Microsoft's copyrights, including, but not limited to the following Certificate Registration Numbers:

(i)   TX 5-407-055 ("Microsoft Windows XP");

(ii)   TX 5-837-617 ("Microsoft Office 2003");

(iii)   TX 5-872-225 ("Microsoft Access 2003");

(iv)   TX 5-837-636 ("Microsoft Excel 2003");

(v)   TX 5-900-087 ("Microsoft Outlook 2003");

(vi)   TX 5-852-649 ("Microsoft PowerPoint 2003");

(vii)   TX 5-900-088 ("Microsoft Word 2003"); and

(viii)   Other items or works protected by Microsoft's copyrights;

(d)   importing to the United States, offering to the public, providing and trafficking in counterfeit and/or unauthorized Microsoft product keys, knowing or having reason to know that such product keys (i) are primarily designed or produced for the purpose of circumventing activation and/or validation features of Microsoft software, (ii) have only limited commercially significant purpose or use other than to circumvent Microsoft's activation and/or validation features, or (iii) are marketed by defendant Wang or persons acting in concert with defendant Wang for use in circumventing Microsoft's activation and/or validation features;

(e)   trafficking, distributing or intending to distribute any counterfeit or illicit Microsoft Certificates of Authenticity, VLK labels, other product key labels, or any Microsoft documentation or packaging; and

12

1   (F)    assisting, aiding, abetting any other person or business entity in engaging in or

2          performing any of the activities referred to in numbered paragraphs (a) through

3          (e) above.

4   In addition, pursuant to Federal Rule of Civil Procedure 56 and 17 U.S.C. § 503(b), to

5   prevent further unauthorized distribution of Microsoft software, the Court finds that Microsoft

6   is entitled to an order authorizing the remedial destruction of the infringing Microsoft software

7   seized from defendant Wang by the United States Probation Department.

8

9          **IT IS SO ORDERED.**

10  Dated:   May 5, 2008

11                                                JEFFREY S. WHITE
                                                  UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

13